**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NUMBER: 15-62617-CIV-BLOOM**

UNITED STATES OF AMERICA *ex rel.*
MARISELA CARMEN MEDRANO, and
ADA LOPEZ,

    Plaintiffs and Relators,

v.

DIABETIC CARE RX, LLC, d/b/a, PATIENT
CARE AMERICA; RIORDAN, LEWIS &
HADEN, INC.; PATRICK SMITH; and
MATTHEW SMITH.

    Defendants.
_____/

**DEFENDANT DIABETIC CARE RX, LLC'S MOTION TO DISMISS
THE UNITED STATES OF AMERICA'S
<u>FIRST AMENDED COMPLAINT IN INTERVENTION</u>**

Defendant Diabetic Care Rx, LLC d/b/a Patient Care America ("PCA") moves to dismiss Counts I-III of the First Amended Complaint in Intervention, ECF No. 147 (the "Amended Complaint") filed by the United States of America (the "Government") under Federal Rules of Civil Procedure 9(b) and 12(b)(6). The grounds supporting this Motion are set forth below.[1]

## I. INTRODUCTION

On March 6, 2019, this Court dismissed the Government's claim under the False Claims Act (the "FCA"), finding that it failed to plausibly allege that any of the at-issue claims were false. (Order Adopting in Part Report and Recommendations ("Order"), ECF No. 142.)

The Government's Amended Complaint seeks to cure the legal shortcomings found by this Court in that count and adds two new claims under the FCA. However, the Government still falls short of stating a viable FCA claim in any of these counts for the same reason: Like the Government's last FCA claim, these FCA claims fail to adequately allege that any of the at-issue claims were false.

As this Court explained in its Order, the Amended Complaint "must satisfy one of the certification theories in order to meet the heightened pleading standard applicable to FCA claims," *i.e.*, the express certification theory or the implied certification theory. (Order 8.) The Amended Complaint still fails to satisfy either. It does not state a claim under the express certification theory because there is not a single alleged false claim by PCA that can be properly viewed as part of the claims submission process. As for the implied certification theory, it does not state a claim for two separate and independent reasons. First, there is not a single alleged specific representation that is rendered misleading by other purported omissions by PCA. Second, it has not adequately alleged materiality. Because neither an express certification theory nor an implied certification theory is adequately alleged, all three FCA claims must be dismissed.[2]

---

[1] PCA also joins the motions to dismiss the Amended Complaint filed by Defendants Riordan, Lewis & Haden, Inc. ("RLH"), Patrick Smith, and Matthew Smith, and adopts all arguments contained therein.

[2] To the extent the Government renews its argument that FCA claims premised on the Anti-Kickback Statute are *per se* false—which this Court has already rejected—the Court should again reject it for the reasons discussed below.

Moreover, each FCA claim fails to comply with Federal Rule of Civil Procedure 9(b), and their dismissal is warranted for this separate reason.[3] As the Eleventh Circuit has made clear and this Court emphasized in dismissing the Government's first attempt to state an FCA claim, generalized allegations of fraud will not survive a motion to dismiss.

In light of the persistent legal shortcomings of the Government's allegations, the FCA claims should be dismissed with prejudice. The Amended Complaint constitutes the *fourth* complaint in this action, and it was filed with the benefit of three years of investigation, ongoing discovery, this Court's Order on Defendants' previous motions to dismiss, and Magistrate Judge Alicia O. Valle's Report and Recommendation ("Report and Recommendation," ECF No. 100). In light of the continued deficiencies of the FCA claims, and because the Government has failed to state a viable FCA claim despite years of investigation, amendment would be futile.

## II. BACKGROUND

### A. Procedural History

The first complaint in this action was filed on December 14, 2015. (ECF No. 1.) The first amended complaint was filed on March 4, 2016. (ECF No. 9.) Afterwards, the Government filed five motions for extension of time to intervene under 31 U.S.C. § 3730(b)(3). (*See* ECF Nos. 12, 15, 18, 21, 24.) The Government did not file a complaint in intervention until February 16, 2018—over two years after the original complaint was filed. (*See* ECF No. 36.)

Defendants filed separate motions to dismiss that complaint on April 17, 2018. (ECF Nos. 51-54.) This Court referred the motions to Judge Valle for a Report and Recommendation. (ECF No. 82.) Judge Valle recommended dismissal of the FCA claim, agreeing with PCA that the complaint did not state a claim under either the express false certification theory or the implied false certification theory. This Court adopted that analysis. (ECF No. 142.) Having dismissed the FCA claim on this ground, the Court did not address the other bases for dismissal of the FCA claim, including that the Government failed to establish materiality. (*Id.*)

The Amended Complaint asserts three FCA counts: (1) the same "presentment" claim (Am. Compl. 69 (citing 31 U.S.C. § 3729(a)(1)(A))); (2) a new "make-or-use" claim (*id.* (citing 31

---

[3] PCA argued for dismissal of the previous FCA claim on this ground. The Court did not reach that argument because the Court dismissed the claim for its failure to adequately allege falsity. (Order 13.)

2

U.S.C. § 3729(a)(1)(B))); and a new conspiracy claim that appears to be asserted against only PCA and RLH (*id.* (citing 31 U.S.C. § 3729(a)(1)(C))).[4]

**B. The Amended Complaint**

The allegations of the Amended Complaint are not rehashed in detail here given the extensive briefing to date. In summary, the Amended Complaint alleges that Defendants paid marketers to obtain referrals for compound drugs reimbursed by TRICARE, and to patients to induce them to purchase drugs reimbursed by TRICARE. (Am. Compl. ¶¶ 17-18.) The Amended Complaint alleges that this caused Defendants to knowingly present, or cause to be presented, false or fraudulent claims to TRICARE, and to make, use, or cause to be made or used false statements and records. (*Id.* ¶ 19.) The Amended Complaint also alleges that Defendants submitted or caused to be submitted claims to TRICARE for prescriptions that were not supported by a valid patient-prescriber relationship. (*Id.* ¶ 20.) Finally, it alleges that RLH and PCA conspired to violate the FCA. (*Id.* ¶ 22.)

The Amended Complaint includes nine representative claims. (*Id.* ¶¶ 211-339.) Although the Amended Complaint alleges more detail with respect to those claims than its predecessor, it still fails to identify a single PCA employee or representative who took part in any conduct complained of in the Amended Complaint.

### III. LEGAL STANDARD

**A. Fed. R. Civ. P. 8(a)(2)**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

---

[4] The Amended Complaint also reasserts its payment by mistake and unjust enrichment claims against PCA. PCA does not move to dismiss those counts and need not respond to them until such time as the Court rules on this Motion. *See, e.g.*, *Ferk v. Mitchell*, No. 14-CV-21916, 2014 WL 7369646, at *1 n.1 (S.D. Fla. Dec. 29, 2014) (approving decision to respond to certain counts after the court's decision on its motion to dismiss other counts, and citing cases that conclude Rule 12(a)(4) does not require a party to file an answer while a partial motion to dismiss is pending); *Jacques v. The First Liberty Ins. Corp.*, No. 16-CV-1240, 2016 WL 3221082, at *1 (M.D. Fla. June 9, 2016) (agreeing with a majority of federal courts that a Rule 12(b) motion to dismiss tolls the time for a defendant to answer, even when not all the counts in the complaint are the subject of the motion to dismiss).; *Beaulieu v. Board of Trustees of Univ. of West Florida*, No. 07-CV-30, 2007 WL 2020161, at *2 (N.D. Fla. July 9, 2007) ("Defendant's [partial] motion to dismiss . . . automatically extends its time to answer under Rule 12(a)(4) until after the court has ruled on Defendant's motion to dismiss.").

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Additionally, 'conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal.'" *United States ex rel. Keeler v. Eisai, Inc.*, 568 F. App'x 783, 792-93 (11th Cir. 2014) (quoting *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1195 (11th Cir. 2003)). The "[f]actual allegations must be enough to raise a right of relief above the speculative level." *Twombly*, 550 U.S. at 545.

**B. Fed. R. Civ. P. 9(b)**

In addition to the above requirements, complaints alleging a violation under the FCA must also satisfy Federal Rule of Civil Procedure 9(b). *See United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1308-09 (11th Cir. 2002). "A party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "The particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (citations omitted).

Under Rule 9(b), a complaint will not survive a motion to dismiss if the complaint fails to set forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997). Specifically, in a *qui tam* action, "[t]he plaintiff's complaint must allege the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Id.* (quoting *Cooper v. Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562, 568 (11th Cir. 1994) (alterations in original)); *Clausen*, 290 F.3d at 1310. "In a case involving multiple defendants, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Brooks*, 116 F.3d at 1381.

"Whether submission of the claim is sufficiently established is a different question than whether the scheme has been sufficiently pleaded." *Keeler v. Eisai, Inc.*, 568 F. App'x at 797 (citing *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) ("In short, Corsello provided the 'who,' 'what,' 'where,' 'when,' and 'how' of improper practices, but he failed to

4

allege the 'who,' 'what,' 'where,' 'when,' and 'how' of fraudulent submission to the government.")). The Eleventh Circuit has explained that Rule 9(b) is necessary to prevent "[s]peculative suits against innocent actors for fraud" and charges of guilt by association. *Clausen*, 290 F.3d at 1308 (quoting *Cooper*, 19 F.3d at 566-67).

## IV. ARGUMENT

### A. The FCA Claims Should Be Dismissed Because They Still Do Not Adequately Allege the Falsity of the At-Issue Claims.

The FCA presentment and make-or-use claims must be dismissed because they do not allege that any claims were factually or legally false—the same flaw that this Court determined was fatal to the Government's last FCA claim. Because these substantive FCA claims have failed to state a claim, the Government's FCA conspiracy claim likewise must be dismissed.

"There are two types of false or fraudulent claims that may be alleged by plaintiffs pursuing presentment or make-or-use claims under the False Claims Act: factually false claims and legally false claims." *United States ex rel. Phalp v. Lincare Holdings, Inc.*, 116 F. Supp. 3d 1326, 1344 (S.D. Fla. 2015), *aff'd as modified*, 857 F.3d 1148 (11th Cir. 2017). In this case, the Amended Complaint does not allege any factually false claims, so to survive the motion-to-dismiss stage, it must state a viable legally false claim. "A legally false claim is actionable where the supplier has falsely certified compliance with the applicable statutes and regulations, but nevertheless has submitted a claim." *Id.* (citing *United States ex rel. Mastej*, 591 F. App'x at 705-06).

As this Court explained in dismissing the Government's prior FCA claim, the Government "must satisfy one of the certification theories in order to meet the heightened pleading standard applicable to FCA claims." (Order 8.) The Government's Amended Complaint fails to satisfy either theory.

#### 1. The Amended Complaint fails to present a viable express false certification theory because it alleges the same representations that the Court has already rejected.

To plead express certifications, a plaintiff making presentment and make-or-use claims under the FCA must make allegations of express certifications that are "properly viewed as part of the claims submission process." (Order 8.) *See also Phalp*, 116 F. Supp. 3d at 1345 ("Express certification means that the supplier has certified compliance with applicable laws and regulations *as part of the claims submission process*." (emphasis added)); *Keeler*, 568 Fed. App'x at 798-99 ("Courts have recognized that under an express certification theory, falsely certifying compliance

5

with the Anti-Kickback Act . . . *in connection with a claim* submitted to a federally funded insurance program is actionable under the FCA." (citations omitted) (emphasis added)).

The Amended Complaint again rests on PCA's Provider Agreement in an effort to establish an express certification. (*See* Am. Compl. ¶ 21 ("Such false records or statements include PCA's Provider Agreement . . . ."); *id.* ¶ 42 ("PCA violated the express representations it made in its Provider Agreement to abide by fraud and abuse laws by virtue of the conduct alleged below.")). The Court concluded that the Government's previous allegations in connection with the Provider Agreement were insufficient to state a claim under an express certification theory because the agreement did not involve certifications made *in connection with* the representative claims provided. Nothing in the Amended Complaint changes this.

The Amended Complaint did not (and cannot) allege that the Provider Agreement was executed as part of the submissions process for the at-issue claims. The Government has added allegations that PCA was required to enter into such an agreement before submitting the claims at issue and that, in this way, PCA "used it to obtain reimbursement from TRICARE for compounded drugs" during the time at issue. (*E.g.*, *id.* ¶ 31.) But these allegations do not make the representations in the Provider Agreement false *at the time they were made*—2012, more than two years before the time period at issue here. And the fact that the Provider Agreement was "used" thereafter—presumably because it was still in effect—does not mean that the representations contained therein were somehow made again at the time of submission.

There is simply no connection between the Provider Agreement and the claims at issue such that the Provider Agreement could be said to be a certification "*that is identified on the face of the claim submitted.*" *United States ex rel. Ortolano v. Amin Radiology*, No. 10-cv-583, 2015 WL 403221, at *6 (M.D. Fla. Jan. 28, 2015) (citing *United States ex rel. Hobbs v. MedQuest Assocs., Inc.*, 711 F.3d 707, 714 (6th Cir. 2013)) (emphasis added). Indeed, as this Court explained in dismissing the Government's last FCA claim for this reason, cases that have found plausible claims under the express certification theory have made clear that the express certifications were made as part of the claims submission process. *See Mastej*, 591 F. App'x at 705 ("[T]he hospital cost reports falsely certified that the medical services *for the year* were provided in compliance with the applicable health care laws." (emphasis added)); *United States v. Crumb*, No. 15-0655-WS-N, 2016 WL 4480690, at *13 (S.D. Ala. Aug. 24, 2006) ("Form CMS-1500 includes an express certification by the provider that '*the services shown on this form* were medically indicated

6

and necessary for the health of the patient and were personally furnished by me.'" (emphasis added)). By contrast, the Government has tried to take a statement that was not false at the time it was made *and* not made during the claims submission process, and turn this into a false claim under the express certification theory. This is insufficient. *United States ex rel. Grenadyor v. Ukrainian Village Pharm., Inc.*, 772 F.3d 1102, 1105-06 (7th Cir. 2014) ("[I]nsufficient showing that the 'I agree' statement was false when the pharmacy made it."). Just as with the Government's first complaint, the allegations in the Amended Complaint regarding the Provider Agreement cannot be the basis of an express certification theory. (*See* Order 10.)

> **2. The Amended Complaint fails to present a viable implied false certification theory because it fails to adequately allege that the representations at issue were misleading, and it fails to adequately allege materiality.**

The Amended Complaint fails to state a claim under an implied certification theory because it does not adequately allege that the representations at issue were misleading, and they do not adequately allege materiality.

> *a. The Amended Complaint fails to adequately allege that the representations at issue were misleading.*

"[T]he implied certification theory can be a basis for liability, at least where two conditions are satisfied . . . ." *Univ. Health Svcs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2001 (2016). "[F]irst, the claim does not merely request payment, but also makes specific representations about the goods and services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements *makes those representations misleading half-truths*." *Id.* (emphasis added). As the Eleventh Circuit has explained:

> *Escobar* . . . clarified two central and interrelated principles of FCA liability. First, the implied certification theory can be a premise of liability at least where a party, in requesting payment, makes certain representations which are misleading because of the omission of violations of statutory, regulatory, or contractual requirements; any such requirement need not be an express condition of payment for liability to attach. Second, such an omission, to be actionable must be material.

*Marsteller v. Tilton*, 880 F.3d 1302, 1312-13 (11th Cir. 2018); *see also Escobar*, 136 S. Ct. at 2003-04.

The Government alleges that PCA made the following implicit representations by submitting the at-issue claims for payment: "[T]he compounded drug and its ingredients were

7

medically necessary and appropriate for the patient based on a sufficient clinical evaluation of the patient by the prescriber, and that the decision to prescribe or dispense the compounded drug, and its particular ingredients, was not tainted by inducements prohibited by the AKS." (*Id.* ¶ 41.) But no plausible reading of the Government's allegations allows this Court to infer that the representations PCA *did* make led to these "implicit" representations. Thus, the Government's attempt to set forth a viable implied certification theory fails.

Although the Government has now at least identified certain representations made by PCA in submitting its claims, it has still failed to show how PCA's purported omissions of violations of statutory, regulatory, or contractual requirements render those representations misleading. This is exactly what *Escobar* requires. More specifically, the representations the Government points to include information about the patient, prescriber, pharmacy, ingredients in the prescribed drug, price of the ingredients, and the date the prescription was filled. (Am. Compl. ¶ 41.) For the Government's FCA claims to survive, these representations must be misleading half-truths that deal with the goods or services provided. *Marsteller*, 880 F.3d at 1312-13. They are not.

Take, for instance, the Government's Representative Claim 1, Patient RR. According to the Amended Complaint, PCA made specific representations about a prescription written for Patient RR, including:

> (1) that the prescription was written on January 27, 2015, and filled on January 28, 2015; (2) that the prescription number was 107367; (3) that the refill number was 0 . . . ; (4) that the patient's name was RR . . . ; (5) that the drug was prescribed by Sara Garcia . . . ; (6) that the drug was dispensed by PCA . . . ; (7) information regarding drug pricing . . . ; (8) that the drug dispensed was a compound; (9) that the compound was, in total, 360 grams; (10) that the prescription was intended to be a 30-day supply; and (11) that the compound consisted of [certain ingredients].

(Am. Compl. ¶ 218.)[5]  The Government has alleged that PCA made these representations and did not disclose that this prescription was referred to PCA pursuant to a kickback scheme or that there was a valid patient-prescriber relationship between RR and Sara Garcia, and, therefore, these representations are misleading. (*Id.* ¶¶ 219-220.)

Accepting these allegations as establishing an implied certification theory would stretch the bounds set by *Escobar*. There, the Supreme Court found misleading half-truths where the

---

[5] The remaining eight representative claims set forth the same categories of information. (*Id.* ¶¶ 226-339.)

8

defendant "submitted claims for payment using payment codes that corresponded to specific counseling services," thereby representing it had provided those services, when it had not. *Escobar*, 136 S. Ct. at 2000. Similarly, the Supreme Court found further misleading half-truths where the defendant submitted claims using provider identification numbers corresponding with specific job titles that the particular staff members were not qualified to hold. *Id.* The representations at issue were directly related to the omissions about the services that were provided and who was providing them, and so they were directly related to the "goods or services" for which payment was sought.

In contrast, the specific representations PCA is alleged to have made are not rendered misleading, even when viewing the allegations in the light most favorable to the Government. For instance, the Government does not allege the prescription was not written; that it was not written by the prescriber; or that the drug pricing included was incorrect. There is nothing included in any representation that even vaguely alluded to how the prescription was referred to PCA or whether the prescriber examined RR—the two "truths" that supposedly render the representations that were made misleading.

Were an implied certification theory found to be sufficiently stated here, where there is no connection between the representations made and the information omitted, an implied certification theory would *always* exist for any prescription that was allegedly "tainted" by kickbacks or prescribed without an examination. This Court has already rejected such an untethered view of FCA liability. (Order 7 ("[I]f an alleged violation of the AKS were sufficient in and of itself to state a claim under the FCA, a relator or the Government in intervention could always state a FCA claim in a situation arising from an alleged kickback scheme. Such a result would be incorrect, and would render meaningless the established limitations on FCA claims.").)

Finally, to the extent the Amended Complaint can be read to allege that the representations made in the Provider Agreement constitute specific representations for purposes of the implied false certification theory, that fails for the same reasons the Court has already found, as discussed above: Those representations were not made in connection with the submission of the claims at issue. Without allegations that Defendants made some specific representations in connection with the submission of a claim, and without allegations that allow this Court to infer that any purported representations were misleading, the Complaint falls outside the scope of *Escobar* and the Government has failed to state a claim in Counts I and II.

9

### b. *The Amended Complaint fails to adequately allege that the representations at issue were material.*

The Government has also failed to adequately allege materiality, and Counts I and II both fail to state a claim under the implied false certification theory for this separate reason.

To meet *Escobar*'s materiality standard, the Government cannot base its False Claims Act claims on the option or potential to refuse payment for a violation; the Government must show that it does not "routinely pay[] claims despite knowing" about a violation. *Escobar*, 136 S. Ct. at 2004. "The materiality standard is 'demanding,' and 'rigorous.'" *Marsteller*, 880 F.3d at 1312 (11th Cir. 2018); *see also Escobar*, 136 S. Ct. at 2003 ("A misrepresentation cannot be deemed material merely because the government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance."). Here, the Amended Complaint's allegations are a far cry from meeting *Escobar*'s requirement.

As a threshold matter, the Amended Complaint contains many of the same insufficient allegations as the last pleading. It has still failed to make adequate allegations to support its conclusory statement that "[c]ompliance with the AKS and a valid patient-prescriber relationship are material to the government's decision to reimburse a pharmacy for prescription drugs for TRICARE patients." (*See* Am. Compl. ¶ 189.)[6] It alleges that compliance with the Anti-Kickback

---

[6] As PCA's original motion to dismiss argued, the Amended Complaint's theory that the claims submitted to TRICARE were false or fraudulent because, in part, they "were tainted by kickbacks to marketers" is itself a threadbare legal conclusion. It is premised on the allegation that "at no time did Defendants have a bona fide employment relationship with the marketers to whom they paid such remuneration" (*id.* ¶ 17), and the resultant failure to satisfy the "bona fide employment exception" to the Anti-Kickback Statute (*see id.* ¶ 16; *id.* ¶ 75 ("[F]or tax purposes, the marketers were classified as 1099 contractors, not W-2 employees. There was no employment relationship between PCA and the marketing companies or their employees.")).

However, as rulemaking and HHS OIG opinions explain, the failure of a business arrangement to qualify for a safe harbor is not a *per se* violation of the Anti-Kickback Statute. *See* 56 Fed. Reg. 35952, 35953 (noting failure to comply with safe-harbor "may" violate AKS); OIG Advisory Op. 10-23 (Oct. 28, 2010) ("The fact that the Arrangement does not fit in a safe harbor does not end the inquiry under the anti-kickback statute."). Thus, as a threshold matter, the Amended Complaint's jump—from its theory of a lack of a bona-fide employment relationship to its conclusion that Anti-Kickback Statute violations rendered the submitted claims false or fraudulent—fails to adequately plead that the Amended Complaint's proffered theory of violations of the Anti-Kickback Statute are material.

Statute is a "condition of payment" (*id.* ¶ 190), but "the Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive." *Escobar*, 136 S. Ct. at 2003. Furthermore, the Amended Complaint fails to bolster this allegation with any support. It does refer to provisions under the Code of Federal Regulations discussing compliance with "anti-fraud and abuse provisions," "commission and kickback arrangements," and "routine waiver of copayments" (Am. Compl. ¶ 29 (citing 32 C.F.R. §§ 199.9(a)(4), (c)(12), (b)(1))), but this fails to show materiality. In particular, section 199.9(a)(4) provides that "[p]roviders seeking payment from the Federal Government through programs such as [TRICARE] have a duty to familiarize themselves with, and comply with, the program requirements." But "[a] 'duty to familiarize' with program requirements comes nowhere close to establishing a condition of payment . . . That regulation cannot support an implied certification claim." *United States ex rel. Kester v. Novartis Pharms. Corp.*, 2015 WL 109934, at *18 (S.D.N.Y. Jan. 6, 2015); *see also United States ex rel. Kester v. Novartis Pharms. Corp.*, 43 F. Supp. 3d 332, 367 (S.D.N.Y. 2014) (rejecting the contention that § 199.9(c)(12) supports a theory of implied false certification).

Likewise, the Amended Complaint's repeated assertion that "Defendants knew that compliance with the AKS was a condition of payment" (Am. Compl. ¶ 194) fails under *Escobar*, as the Supreme Court explicitly rejected the theory that a "violation is material so long as the defendant knows that the Government would be entitled to refuse payment were it aware of the violation." *Escobar*, 136 S. Ct. at 2004. Further, the Government's attempt to extend this to knowledge of a "material requirement" is entirely unsupported—the Amended Complaint is silent on any support for the contention that PCA knew its alleged actions would be viewed by TRICARE as violative of the Anti-Kickback Statute, and thus, that TRICARE would refuse payment. FCA liability cannot attach under these circumstances. *See United States ex rel. Ketroser v. Mayo Found.*, 729 F.3d 825, 831-32 (8th Cir. 2013) ("The absence of a clear requirement . . . means that Relators pleaded a claim of regulatory noncompliance, not a plausible claim that [defendant] submitted false or fraudulent claims for Medicare payment. . . .  An FCA defendant does not act 'with the knowledge that the FCA requires before liability can attach' when 'the defendant's interpretation of the applicable law is a reasonable interpretation, perhaps even the most reasonable one.'" (citations omitted)).

11

Finally, the Amended Complaint's reference to PCA's failure to seek approval for the manner in which PCA paid third-party marketers or used charities (Am. Compl. ¶ 207) is a red herring under the materiality standard. It is not the law that the failure to seek prior approval renders a claim false or a requirement material. *See Marsteller*, 880 F.3d at 1312 ("The statutory definition of materiality . . . focuses the inquiry on 'the *effect* on the likely or actual behavior *of the recipient* of the alleged misrepresentation.'") (quoting *Escobar*, 136 S. Ct. at 2001 (emphasis added)). This allegation ignores the structure of government reimbursement, which is not one of prior approval.

Setting aside these insufficient allegations from the previous complaint, the Amended Complaint fails to add any new allegations that satisfy *Escobar*'s materiality requirement. For instance, the Government alleges that Congress's enactment of 42 U.S.C. § 1320a-7b(g) "reflects Congress's determination that violations of the AKS are material under the AKS." (Am. Compl. ¶ 193.) But that provision speaks only to the falsity of Anti-Kickback Statute claims, not to their materiality. 42 U.S.C. § 1320a-7b(g). Beyond this, this Court has already made clear that "an alleged violation of the AKS cannot be sufficient in and of itself to state a claim under the FCA, because then a relator or the Government in intervention could always state a FCA claim in a situation arising from an alleged kickback scheme." (Order 7.) This allegation is clearly insufficient.

Further, the Government's allegation that it "frequently brings criminal charges and civil FCA claims against health care providers based on noncompliance with the AKS" (Am. Compl. ¶ 195) fares no better. The Government never even attempts to allege that the Government does not "routinely pay[] claims despite knowing" about such conduct, so it cannot use this argument to allege that such violations are material "*to the Government's payment decision*." *Escobar*, 136 S. Ct. at 2002, 2004 (emphasis added). Without any allegations as to the facts or circumstances of theses cases, the Government's vague allusion to them is not a basis to find materiality.

The Government's discussion of the parallel criminal charges against marketers and physicians involved in the conduct at issue in this very case (Am. Compl. ¶¶ 196-200) also cannot be used to show materiality (much less knowledge of materiality). Again, the Government's decision to bring FCA and criminal cases against non-parties to this case about the same conduct at issue here in no way shows that the Government does not "routinely pay[] claims despite knowing" about that conduct. *See Escobar*, 136 S. Ct. at 2002.

Worse still, the Government's allegation that a valid patient-prescriber relationship is "also important" to the Government's decision to reimburse prescriptions (*id.* ¶ 201) could hardly be said to meet *Escobar*'s "demanding" and "rigorous" standard. The only factual allegation to support this half-hearted assertion is that a TRICARE policy imposes certain requirements for telemedicine visits (*id.* ¶ 203), but the implication that PCA did not comply with this policy is, at best, a claim of "regulatory noncompliance"—not a viable FCA claim. *See Ketroser*, 729 F.3d at 831-32.

The Amended Complaint's failure to comply with *Escobar*'s "demanding" and "rigorous" standard through its conclusory and threadbare allegations of materiality is fatal to its attempt to assert an FCA claim under an implied certification theory. *See, e.g.*, *United States ex rel. Schimelpfenig v. Dr. Reddy's Labs. Ltd.*, No. 11-cv-04607, 2017 WL 1133956, at *7 (E.D. Penn. Mar. 27, 2017) (dismissing FCA complaint under *Escobar* and explaining that "the relevant inquiry is whether the Government's payment decision was influenced by claimant's purported compliance with a particular requirement, not whether a given issue has been deemed worthy of regulation"); *United States ex rel. Scharff v. Camelot Counseling*, 13-cv-03791, 2016 WL 5416494, at *8 (S.D.N.Y. Sept. 28, 2016) (dismissing FCA complaint in light of complaint's failures to "explain why the purportedly fraudulent conduct was material to the payment of reimbursements," and to "allege whether the government has refused to reimburse clinics that have engaged in conduct similar to Camelot's"); *United States ex rel. Dresser v. Qualium Corp.*, No. 12-cv-01745, 2016 WL 3880763, at *6 (N.D. Ca. July 18, 2016) (dismissing FCA complaint in intervention based on implied certification theory that defendants violated Medicare regulations, in part because materiality of payments was alleged in conclusory fashion).

Thus, the Amended Complaint fails to allege a viable FCA claim under either the express false certification theory or the implied false certification theory, and the substantive FCA claims (Counts I and II) must be dismissed for this reason.

**3. To the extent the Government again argues that FCA claims premised on the Anti-Kickback Statute are *per se* false, that argument has already been rejected by this Court and is undermined by the Government's own position that the applicable provision is unconstitutional.**

As noted above, the Court made clear that the Government is required to adequately plead its FCA claims under a theory of either express or implied false certification. In so ruling, the Court explicitly rejected the Government's argument that claims that are tainted by violations of the Anti-

13

Kickback Statute are *per se* false under the FCA. (Order 6.) To the extent the Government renews this argument, the Court should reject it again for the same reason: Accepting the Government's argument would lead to a plausible FCA claim in every "situation arising from an alleged kickback scheme," which would "render meaningless the established limitations on FCA claims." (*Id.* at 7.)

This argument should be rejected for the separate reason that it is inconsistent with a position taken in another case by the Government. More specifically, the argument is based on the premise that a provision of the Anti-Kickback Statute enacted through the Patient Protection and Affordable Care Act (the "Affordable Care Act")—specifically, 42 U.S.C. § 1320a-7b(g)—makes any claim tainted by a violation of the Anti-Kickback Statute *per se* false. The Government has contended this means it does not need to allege falsity. However, the Government itself recently stated that the entire Affordable Care Act is unconstitutional. This would necessarily include the Anti-Kickback Statute provision at issue in this case.

By way of background, in a Northern District of Texas case, the court held that the Affordable Care Act is unconstitutional in its entirety. *See Texas v. United States*, No. 18-CV-00167, 2018 WL 6589412, at *29 (N.D. Tex. Dec. 14, 2018). The Government has recently stated that it agrees with this ruling. On March 25, 2019, the Government filed a letter in the Fifth Circuit Court of Appeals, where the *Texas* appeal is pending, stating that the court's judgment should be affirmed: "The Department of Justice has determined that the district court's judgment should be affirmed. . . . [T]he United States is not urging that any portion of the district court's judgment be reversed . . . ." (*See* Exh. A.) The United States plainly cannot argue that an entire act is unconstitutional in one case and then try to enforce it in another. *See Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1273 (11th Cir. 2010) ("The purpose of judicial estoppel is to protect the integrity of the judicial process by prohibiting parties from changing positions according to the exigencies of the moment.").

In light of this Court's prior decision, as well as the reasoning employed by the court in *Texas* and the Government's own position that the Affordable Care Act is unconstitutional, the Court should (again) reject any argument the Government may make that the Affordable Care Act establishes the falsity of its allegations based on the Anti-Kickback Statute.

### 4. Because the substantive FCA claims fail adequately plead falsity, the FCA conspiracy claim fails as well.

In light of the Government's failure to adequately allege a claim for relief under the express and implied certification theories, the FCA conspiracy must also be dismissed. *Jacobs v. Bank of America Corp.*, No. 15-CV-24585, 2017 WL 2361944, at *6 (S.D. Fla. Apr. 27, 2017) (dismissing FCA conspiracy claim because the underlying FCA claim failed as a matter of law); *United States ex rel. Ibanex v. Bristol-Myers Squib Co.*, 917 (6th Cir. 2017) ("The absence of such a conspiratorial statement, in conjunction with relators' failure to adequately plead a violation of any other section of the FCA, renders insufficient the otherwise bare allegation that there was an FCA conspiracy."); *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 367 n.16 (5th Cir. 2014) ("Without the required allegations concerning a certification prerequisite, [the FCA conspiracy claim] also fail[s]."); *Marsteller*, 880 F.3d at 1310 (noting district court held that dismissal of the substantive FCA claims warranted dismissal of the conspiracy claim as a matter of law).

## B. The FCA Claims Should Be Dismissed Because They Fail to Comply with Rule 9(b)'s Particularity Requirement.

The FCA claims should be dismissed for the separate reason that the Government still fails to allege with particularity, and with sufficient indicia of reliability, the circumstances of the purported fraud. Imposed on the elements for each FCA claim brought here is the requirement that complaints alleging a violation under the FCA satisfy Federal Rule of Civil Procedure 9(b). *See Clausen*, 290 F.3d at 1308-09. Because the Amended Complaint does not allege which PCA employee or representative engaged in the purported fraud, all three FCA claims must be dismissed under Rule 9(b). Further, because the conspiracy claim consists of only a threadbare allegation that there was an agreement between RLH and PCA, that claim fails under Rule 9(b) for this separate reason.

### 1. All three FCA claims should be dismissed because they fail to identify the PCA employee or representative who engaged in the purported fraud.

The three FCA claims asserted in Amended Complaint should be dismissed for the independent reason that they fail to allege with particularity which PCA employee or representative engaged in the purported fraud. Rule 9(b) demands this.

Though the Amended Complaint includes much more information concerning each of the nine representative claims than its previous iteration, these allegations still fail to allege with particularity and the sufficient indicia of reliability the circumstances of the purported fraud: They do not identify a single PCA employee or representative who paid a kickback, a single PCA employee or representative who was involved in or aware of the lack of a valid prescriber-patient relationship, or a single PCA employee who made any representation. The only allegations in the representative claims that identify any PCA employee or representative are allegations that Matthew Smith received various faxes or emails with prescriptions (*e.g.*, Am. Compl. ¶ 214), and general allegations that Patrick Smith and/or Matthew Smith "knowingly caused the submission of this claim" (*e.g.*, *id.* ¶ 225)—hardly allegations of circumstances constituting fraud.[7]

Simply put, the "who" that is required to state an FCA claim against PCA for the purported conduct is missing. *See Hopper*, 588 F.3d at 1326 (failure to identify "specific persons or entities that participated in any step of this [claim submission] process"); *United States ex rel. Chase v. HPC Healthcare, Inc.*, 723 Fed. App'x 783, 790-91 (11th Cir. 2018) (holding complaint's presentment and make-or-use FCA claims failed to provide required indicia of reliability where it failed to "give examples of . . . who at Chapters made particular falsifications, when the falsifications occurred, or when the fraudulent bills were submitted to Medicare," and also "fail[ed] to identify a single individual from various entities who made a referral to Defendant in exchange for a benefit, a single patient that was improperly referred, who at Defendant provided the bribes, or when those exchanges took place"); *id.* at 791 (similarly holding that FCA conspiracy claim failed to allege an agreement to defraud the government because it did not "identify the people from any of the Referral Defendants involved in the agreement or any specific facts that show an agreement to violate the False Claims Act").

In sum, the Amended Complaint still fails under Rule 9(b) because the representative claims fail to specify the identity of any PCA employee or representative who committed the acts of which the Government complains. *See Clausen*, 290 F.3d at 1310 ("[A] plaintiff must plead 'facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of

---

[7] Multiple claims do not even contain these (innocuous or threadbare) allegations. (*See, e.g.*, *id.* ¶¶ 254-267 (representative claim 4 does not name which PCA employee or representative received the prescriptions); *id.* ¶¶ 326-339 (representative claim 9 does not name which PCA employee or representative received the prescriptions).)

16

the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.") (internal citations and alterations omitted).

### 2. The FCA conspiracy claim must be dismissed under Rule 9(b) because the allegation that there was an agreement between RLH and PCA is a threadbare legal conclusion.

The conspiracy claim also fails under Rule 9(b) because the allegation that there was an agreement between RLH and PCA is a threadbare legal conclusion.[8] There are no allegations in the representative claims or the Amended Complaint generally that substantiate it. Under the Eleventh Circuit's decision in *Corsello*, dismissal is thus required.

In *Corsello*, the Court affirmed the district court's dismissal of an FCA conspiracy claim under Rule 9(b) because the allegation that "Lincare and Varraux conspired to defraud the Government" was a "bare legal conclusion . . . unsupported by specific allegations of any agreement or overt act." 428 F.3d at 1014. Here, too, the Amended Complaint contains only the threadbare recital of the existence of a conspiracy without any factual allegations to support the existence of any agreement or overt act in furtherance of that agreement. (*See* Am. Compl. ¶¶ 350 ("Defendants RLH and PCA . . . conspired and entered into agreement to have the United States pay false or fraudulent claims . . . in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(C)."); *see also id.* ¶¶ 351-52.)

The one allegation the Government makes concerning an agreement between RLH and PCA that even touches upon the purportedly illicit conduct is an agreement to use independent contractors, not employed sales staff, to generate prescriptions for topical compounds. (*Id.* ¶ 65.) But there is nothing illegal about using independent contractors in this way, *see* OIG Advisory Op. 10-23 (Oct. 28, 2010) ("The fact that the Arrangement does not fit in a safe harbor [such as the use of *bona-fide* employees rather than independent contractors] does not end the inquiry under the anti-kickback statute."), and so this cannot amount to an agreement to have a false claim paid by the Government. Thus, the conspiracy claim must be dismissed. *Accord United States v. Healogics, Inc.*, 2016 WL 2744949, at *7 (M.D. Fla. May 11, 2016) ("Relators fail to state a conspiracy claim because although Relators allege that Healogics entered into agreements with

---

[8] In addition, the FCA conspiracy claim against PCA and RLH must be dismissed because it is barred by the intra-corporate conspiracy doctrine. *Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000). PCA joins fully in the argument advanced by RLH in Section D.3 of its motion to dismiss on this basis.

each of its partner hospitals and conspired to defraud the U.S., they fail to identify, inter alia, any person who agreed with Healogics to defraud the government.").[9]

Based on the foregoing, the FCA claims (Counts I-III) must be dismissed.

## C. The FCA Claims Should Be Dismissed with Prejudice.

Because "[t]hree attempts at proper pleadings are enough," *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1057 (11th Cir. 2015), this Court should deny the Government leave to amend its FCA claims yet again.

The Amended Complaint constitutes the fourth complaint in this action. (*See* Report and Recommendation 31 n.21 (the Government's complaint in intervention "is the third complaint in this action")). *See also In re Pharm. Indus. Average Wholesale Price Litig.*, 538 F. Supp. 2d 392, 396 (D. Mass. 2008) ("Courts have treated a complaint in intervention as an amended complaint." (citing *United States ex rel. Purcell v. MWI Corp.*, 254 F. Supp. 2d 69, 75 (D.D.C. 2003) ("[T]he government's complaint in intervention is an amendment of the relator's complaint.") (other citations omitted)); *United States ex rel. Alsaker v. CentraCare Health Sys., Inc.*, No. 99-cv-106, 2002 WL 1285089, at *1 (D. Minn. June 5, 2002) (describing the government's complaint in intervention as an amended complaint).

The first complaint was filed on December 14, 2015. (*See* ECF No. 1.) The Government eventually filed the intervenor complaint on February 16, 2018—over two years after the original complaint was filed. (*See* ECF No. 36.) And after the Report and Recommendation concluded that the FCA count be dismissed, and this Court adopted that recommendation, the Government filed the First Amended Complaint with *three* FCA counts, all of which fail to state a claim. This is "enough." *Urquilla-Diaz*, 780 F.3d at 1057.

The deficiencies of the Amended Complaint demonstrate that amendment of the FCA claims would be futile. *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). The FCA claims contain the same legal shortcomings as the Government's initial allegations, despite being filed after more than three years of investigation, the benefit of this Court's Order on Defendants'

---

[9] PCA joins in the arguments advanced by RLH in Section D.1 of its motion to dismiss. In particular, because the Government has failed to allege who from RLH entered into the supposed "agreement," or the "what," "why," "when," "where," and "how" of the conspiracy in general, the claim fails under Rule 9(b). *See United States ex rel. Bane Easy Pulmonary Svcs., Inc.*, 597 F. Supp. 2d 1280, 1290 (M.D. Fla. 2009); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067-68 (11th Cir. 2007).

18

motions to dismiss, Judge Valle's Report and Recommendation, and ongoing discovery. Moreover, the Government's newly asserted make-or-use and conspiracy FCA claims are based on the same conduct at issue in the complaint in intervention (and that has been the subject of the Government's years-long investigation). Thus, it is in the interests of justice to deny leave to amend these "new" FCA claims because there has been undue delay in bringing them. *Id.* Indeed, the Government stands hard-pressed to explain "why [it] could not have discovered and pled [its claim] in [its] original complaint . . . ." *Carruthers v. BSA Advert., Inc.*, 357 F.3d 1213, 1218 (11th Cir. 2004).

For these reasons, PCA requests that the Court dismiss the FCA claims with prejudice.

## V. CONCLUSION

For the reasons set forth above, Diabetic Care Rx, LLC d/b/a Patient Care America respectfully requests that the Court grant this Motion and dismiss the Counts I, II, and III of the Government's First Amended Complaint with prejudice.

Dated: April 1, 2019

Respectfully Submitted,

*/s/Gerald E. Greenberg*
GERALD E. GREENBERG
Florida Bar No. 440094
ggreenberg@gsgpa.com
DANIEL S. GELBER
Florida Bar No. 512877
dan@gsgpa.com
MIKAYLA ESPINOSA
Florida Bar No. 1008227
mikaylaespinosa@gsgpa.com
GELBER SCHACHTER & GREENBERG, P.A.
1221 Brickell Avenue, Suite 2010
Miami, Florida 33131
Telephone: (305) 728-0950
Facsimile: (305) 728-0951
E-service: efilings@gsgpa.com

*Counsel for Defendant Diabetic Care Rx, LLC, d/b/a Patient Care America*